# Exhibit B

2/16/2017 12:07:06 PM
Chris Daniel - District Clerk Harris County
Envelope No. 15359831
By: Bonisha Evans
Filed: 2/16/2017 12:07:06 PM

CAUSE NO. _____

| | | |
|---|---|---|
| THE RETREAT AT GLEANNLOCH FARMS HOA, | § § § | IN THE JUDICIAL COURT OF |
| Plaintiff, | § § | |
| V. | § § | |
| ASI LLOYDS, LARRY C. JONES INSURANCE AGENCY, AMILEX CONSULTANTS LLC, MICHAEL FOWLER, ALAN BERRYHILL, CROSSPOINTE CONSTRUCTION, INC., AND ALLEN LAYNE, | § § § § § § § § | HARRIS COUNTY, TEXAS |
| Defendants. | § | _____ DISTRICT COURT |

## PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND, AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, The Retreat at Gleannloch Farms HOA, ("Plaintiff"), and files **Plaintiff's Original Petition, Jury Demand, and Request for Disclosure**, complaining of ASI Lloyds (hereinafter referred to as "ASI"), Larry C. Jones Insurance Agency (hereinafter referred to as "Jones"), Amilex Consultants, LLC (hereinafter referred to as "Amilex"), Michael Fowler (hereinafter referred to as "Fowler"), Alan Berryhill (hereinafter referred to as "Berryhill"), Crosspointe Construction, Inc. (hereinafter referred to as "Crosspointe"), and Allen Layne (hereinafter referred to as "Layne") (or collectively "Defendants") and for cause of action, Plaintiff respectfully shows the following:

### DISCOVERY CONTROL PLAN

1.     Plaintiff intends to conduct discovery under Level 3, Texas Rules of Civil Procedure 190.4 and 169.

## PARTIES

2.  Plaintiff, The Retreat at Gleannloch Farms HOA, is a homeowners' association for multiple homes located in Harris County, Texas.

3.  Defendant, ASI Lloyds is a Texas corporation that provides insurance underwriting services in the State of Texas. Plaintiff requests service of citation upon ASI Lloyds through its registered agent for service: **Rodney D. Bucker, 700 North Pearl Street, 25th Floor, Dallas, Texas 75201-2825**. Plaintiff requests service at this time.

4.  Defendant, Amilex Consultants LLC, is a corporation headquartered in Mississippi that does business in the State of Texas. It does not appear Amilex is registered with the Texas Department of Insurance. Plaintiff requests service of citation at Amilex's principal place of business: **17 Giffords Lane, Picayne, MS 39466**. Plaintiff requests service at this time.

5.  Defendant Michael Fowler is an independent adjuster hired by Amilex. Fowler may be served with citation at his last known place of employment: **17 Giffords Lane, Picayune, MS 39466**. Plaintiff requests service at this time.

6.  Larry C. Jones Insurance Agency is an insurance agent who is a resident of the State of Texas and duly authorized to sell property and casualty insurance to consumers in the State of Texas. Jones, who is a resident of the State of Texas, may be served with process at the address listed with the Texas Department of Insurance: **8623 Louetta Road, Spring, Texas 77379**.

7.  Defendant, CrossPointe Construction, Inc., is a domestic company that does business in the State of Texas. It does not appear CrossPointe is registered with the Texas Department of Insurance. Plaintiff requests service of citation through CrossPointe's registered agent

for process: **C/O Alan Berryhill, 8601 Navidad Drive, Austin, Texas 78735**. Plaintiff requests service at this time.

8.   Defendant Alan Berryhill is a consultant hired by ASI.  It does not appear Berryhill is registered with the Texas Department of Insurance as a licensed adjuster.  Berryhill may be served with citation at: **8601 Navidad Drive, Austin, Texas 78735**.  Plaintiff requests service at this time.

9.   Defendant Allen Layne is an individual resident of Oxford, Mississippi.  Layne is duly authorized as an adjuster in the State of Texas through the Texas Department of Insurance. Layne may be served with citation at the address listed with the Texas Department of Insurance: **108 Oxford Creek Drive, Oxford, MS 38655-2242**.  Plaintiff requests service at this time.

## JURISDICTION

10.   The Court has jurisdiction over ASI because this domestic Defendant engages in the business of underwriting insurance in the State of Texas, and the causes of action arise out of ASI's business activities in the State of Texas, including those in Harris County, Texas, with reference to this specific case.

11.   The Court has jurisdiction over Jones as this company is a domestic corporation in the State of Texas that engages in the business of selling insurance policies in the State of Texas, and the causes of action arise out of its business activities in the State of Texas, with reference to this specific case.

12.   The Court has jurisdiction over Layne because this Defendant engages in the business of adjusting insurance claims in the State of Texas, and the causes of action arise out of this

3

Defendant's business activities in the State of Texas, including those in Harris County, Texas, with reference to this specific case.

13. The Court has jurisdiction over Amilex because this Defendant engages in the business of adjusting/providing consultation services for insurance claims in the State of Texas, and the causes of action arise out of this Defendant's business activities in the State of Texas, including those in Harris County, Texas, with reference to this specific case.

14. The Court has jurisdiction over Fowler because this Defendant engages in the business of adjusting/providing consultation services for insurance claims in the State of Texas, and the causes of action arise out of this Defendant's business activities in the State of Texas, including those in Harris County, Texas, with reference to this specific case.

15. The Court has jurisdiction over CrossPointe because this Defendant engages in the business of adjusting/providing consultation services for insurance claims in the State of Texas, and the causes of action arise out of this Defendant's business activities in the State of Texas, including those in Harris County, Texas, with reference to this specific case.

16. The Court has jurisdiction over Berryhill because this Defendant engages in the business of adjusting/providing consultation services for insurance claims in the State of Texas, and the causes of action arise out of this Defendant's business activities in the State of Texas, including those in Harris County, Texas, with reference to this specific case.

**VENUE**

17. Venue is proper in Harris County, Texas because the insured properties are located in Harris County, Texas, and all or a substantial part of the events giving rise to this lawsuit occurred in Harris County, Texas. TEX. CIV. PRAC. & REM. CODE § 15.032.

**FACTS**

18.  Plaintiff asserts claims for fraud, breach of contract, violations of sections 541 and 542 of the Texas Insurance Code, violations of the Texas DTPA, negligent hiring, negligence, and gross negligence.

19.  Plaintiff owns an ASI Lloyds commercial insurance policy, number TCP1286 ("the Policy"). At all relevant times, Plaintiff was the insured for the 60 buildings located at what Defendant ASI labels as "8406 Sunset Loch Drive." A list of the 60 buildings and inclusive addresses have been attached to this petition for reference and are incorporated herein. *See* Exhibit A.

20.  When Plaintiff negotiated the premium amount, Jones or Jones' agents represented that the Policy Plaintiff purchased provided full coverage for hail and wind losses. Unfortunately, ASI later represented that the Policy sold by Jones or Jones' agents did not afford full coverage. Specifically, the Policy sold by Jones or Jones' agents was one with specific exclusions for limited interior storm coverage and partial coverage for the exterior.

21.  Ultimately, based on wrongfully applied provisions in the Policy, ASI has refused substantive coverage which includes, but is not limited to, replacement of all roofs at the complex, as well as storm-damaged portions of the interior.

22.  On or about either April or May 19, 2015, the Property sustained extensive damage resulting from a severe storm that passed through the Harris County, Texas area.

23.  In the aftermath of the wind and hailstorm, Plaintiff submitted a timely claim to ASI on May 20, 2015 against the Policy for damage to the Property.

24.  Plaintiff asked ASI to cover the cost of damage to the Property pursuant to the Policy.

5

25.    ASI assigned claim number 318872-154430 to Plaintiff's claim.

26.    Defendants conducted substandard and improper inspections and adjustments of the Properties, which yielded grossly inaccurate and unrealistic assessments of the cause, extent, and dollar amount of damage to the Property.

27.    ASI initially assigned adjustment of the claim to the independent adjusting firm of Amilex Consultants, LLC.  Amilex and/or Fowler inspected the Properties from May 26, 2015 to June 3, 2015, and determined that only buildings 11, 29, 35, 37, 39, 41, 42, 45, and 52 were storm damaged in the amount of $150,027.60.  This adjustment was improper as ASI later determined that there was at least some damage to all 60 buildings, and not just the 9 that Amilex scoped.  Amilex does not appear to be a licensed adjusting company with the Texas Department of Insurance; and at this time, Plaintiff is unsure if Fowler is a properly licensed adjuster in the state of Texas.  ASI adopted these findings and made payment accordingly.

28.    The insured disagreed with Amilex and ASI's assessment and informed ASI that there was damage that Amilex had missed during the first inspection.

29.    Thereafter, a second inspection was set up, and ASI again sent out Amilex.  Amilex agreed that the claim warranted another look.

30.    On December 3, 2015 Alan Berryhill with CrossPointe Construction was retained by ASI to inspect the Properties.  However, it does not appear that Alan Berryhill or CrossPointe Construction are licensed adjusting individuals/entities with the Texas Department of Insurance.  Nonetheless, based on Berryhill and/or CrossPointe's findings, ASI adopted these findings, and additional payment was allegedly made to Plaintiff.

31.    On January 28, 2016, ASI was informed by Plaintiff that Plaintiff had retained the services

6

of a public adjuster to assist with the Claim.  As a result of Plaintiff's retention of a public adjuster, ASI sent out an engineering company, Rimkus Consulting Group, Inc. ("Rimkus"), to inspect the Properties sometime around early to mid-April 2015.

32.    Despite ASI's hiring of three different companies to inspect the Property on numerous occasions, a licensed adjuster did not get involved in the claim until sometime around November 3, 2015 when the Property was allegedly inspected by ASI adjuster Allen Layne.

33.    However, for reasons unknown, an official line-itemized estimate from ASI was not completed until June 27, 2016, more than a year after Plaintiff initially reported the Claim.

34.    Michael    Fowler,    Allen    Layne,    Alan    Berryhill,    and    CrossPointe's adjustment/investigation/estimation of the claim was problematic because:

   a.   Fowler, Layne, Berryhill, and CrossPointe had a vested interest in undervaluing the claim assigned to them by ASI in order to maintain their employment or to receive future employment. The disparity in the number of damaged items in their reports/assessment compared to that of Plaintiff's public adjuster's is evidence of fraud on the part of Fowler, Layne, Berryhill, and CrossPointe. The valuation of damages that were included in their reports compared to Plaintiff's public adjuster's is also evidence of fraud on the part of Fowler, Layne, Berryhill, and CrossPointe.

   b.   Fowler, Layne, Berryhill, and CrossPointe made misrepresentations as to the amount of damage Plaintiff's Property sustained, as well as misrepresentations regarding how much it would cost to repair the damage to Plaintiff's Property.

35.    After substantial delays in investigating the claim, ASI and its agents underestimated damages on all Properties.  Specifically, ASI and/or the agents it hired listed above

7

determined that:

    a.   The Property denoted as **Building 1** sustained $4,892.61 in damage to 68 individual shingles and 14 exhaust caps. Plaintiff estimates the replacement cost to repair damage to this Property is currently $77,278.50. This damage includes, but is not limited to, the roof and elevations.

    b.   The Property denoted as **Building 2** sustained $1,697.27 in damage to 14 exhaust caps and vents, but allegedly no wind or hail damage to the shingles on the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $64,906.44. This damage includes, but is not limited to, the roof and elevations.

    c.   The Property denoted as **Building 3** sustained $2,858.32 in damage to 94 individual shingles, and 8 exhaust caps and vents. Plaintiff estimates the replacement cost to repair damage to this Property is currently $64,007.66. This damage includes, but is not limited to, the roof and elevations.

    d.   The Property denoted as **Building 4** sustained $3,794.07 in damage to 90 individual shingles, 14 exhaust caps and vents. Plaintiff estimates the replacement cost to repair damage to this Property is currently $97,936.55. This damage includes, but is not limited to, the roof and elevations.

    e.   The Property denoted as **Building 5** sustained $1,697.27 in damage to 12 exhaust caps, but allegedly no wind or hail damage to the shingles on the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $85,963.34. This damage includes, but is not limited to, the roof and elevations.

8

f.   The Property denoted as **Building 6** sustained $2,446.44 in damage to 34 individual shingles and 12 exhaust caps, but no other storm damage.  Plaintiff estimates the replacement cost to repair damage to this Property is currently $65,806.44.  This damage includes, but is not limited to, the roof and elevations.

g.   The Property denoted as **Building 7** sustained $2,593.56 in damage to 38 individual shingles, the gutters, and 12 exhaust caps.  Plaintiff estimates the replacement cost to repair damage to this Property is currently $99,355.70.  This damage includes, but is not limited to, the roof, sheathing, and elevations.

h.   The Property denoted as **Building 8** sustained $3,056.62 in damage to 63 individual shingles, the gutters, and 12 exhaust caps.  Plaintiff estimates the replacement cost to repair damage to this Property is currently $65,557.88.  This damage includes, but is not limited to, the roof, sheathing, and elevations.

i.   The Property denoted as **Building 9** sustained $2,745.31 in damage to 55 individual shingles, the gutters, and 12 exhaust caps.  Plaintiff estimates the replacement cost to repair damage to this Property is currently $99,237.23.  This damage includes, but is not limited to, the roof, sheathing, and elevations.

j.   The Property denoted as **Building 10** sustained $1,793.94 in damage to 12 exhaust caps, the gutters, and downspouts, but allegedly no wind or hail damage to the shingles on the roof.  Plaintiff estimates the replacement cost to repair damage to this Property is currently $59,545.22.  This damage includes, but is not limited to, the roof and elevations.

k.   The Property denoted as **Building 11** sustained $4,950.09 in damage to 125

individual shingles, the gutters, and 12 exhaust caps. Plaintiff estimates the replacement cost to repair damage to this Property is currently $65,253.64. This damage includes, but is not limited to, the roof, sheathing, and elevations.

l.  The Property denoted as **Building 12** sustained $4,358.43 in damage to 133 individual shingles, the gutters, and 12 exhaust caps. Plaintiff estimates the replacement cost to repair damage to this Property is currently $63,823.81. This damage includes, but is not limited to, the roof, sheathing, and elevations.

m.  The Property denoted as **Building 13** sustained $3,238.34 in damage to 79 individual shingles, the gutters, and 12 exhaust caps. Plaintiff estimates the replacement cost to repair damage to this Property is currently $64,549.07. This damage includes, but is not limited to, the roof, sheathing, and elevations.

n.  The Property denoted as **Building 14** sustained $3,862.58 in damage to 115 individual shingles and 12 exhaust caps. Plaintiff estimates the replacement cost to repair damage to this Property is currently $88,373.85. This damage includes, but is not limited to, the roof, sheathing, and elevations.

o.  The Property denoted as **Building 15** sustained $899.28 in damage to 8 exhaust caps, gutters, and downspouts, but allegedly no wind or hail damage to the shingles on the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $74,900.67. This damage includes, but is not limited to, the roof and elevations.

p.  The Property denoted as **Building 16** sustained $2,093.19 in damage an exhaust cap, gutters, and downspouts, but allegedly no wind or hail damage to the shingles

on the roof.  Plaintiff estimates the replacement cost to repair damage to this Property is currently $85,480.31.  This damage includes, but is not limited to, the roof and elevations.

q.   The Property denoted as **Building 17** sustained $1,810.39 in damage to 14 exhaust caps, gutters, and downspouts, but allegedly no wind or hail damage to the shingles on the roof.  Plaintiff estimates the replacement cost to repair damage to this Property is currently $77,973.70.  This damage includes, but is not limited to, the roof and elevations.

r.   The Property denoted as **Building 18** sustained $2,036.63 in damage to 14 exhaust caps, gutters, and downspouts, but allegedly no wind or hail damage to the shingles on the roof.  Plaintiff estimates the replacement cost to repair damage to this Property is currently $79,198.09.  This damage includes, but is not limited to, the roof and elevations.

s.   The Property denoted as **Building 19** sustained $1,268.07 in damage to 22 individual shingles, the gutters, and 8 exhaust caps.  Plaintiff estimates the replacement cost to repair damage to this Property is currently $45,910.09.  This damage includes, but is not limited to, the roof, sheathing, and elevations.

t.   The Property denoted as **Building 20** sustained $5,794.49 in damage to 199 individual shingles, the gutters, and 20 exhaust caps.  Plaintiff estimates the replacement cost to repair damage to this Property is currently $76,417.15.  This damage includes, but is not limited to, the roof, sheathing, and elevations.

u.   The Property denoted as **Building 21** sustained $3,092.43 in damage to 82

11

individual shingles, the gutters, and 14 exhaust caps.  Plaintiff estimates the replacement cost to repair damage to this Property is currently $41,552.45.  This damage includes, but is not limited to, the roof, sheathing, and elevations.

v.  The Property denoted as **Building 22** sustained $1,352.99 in damage to 24 individual shingles, the gutters, and 8 exhaust caps.  Allegedly, however, there was no damage to the shingles on the front, left or back slopes.  Plaintiff estimates the replacement cost to repair damage to this Property is currently $111,042.61.  This damage includes, but is not limited to, the roof, sheathing, and elevations.

w.  The Property denoted as **Building 23** sustained $3,091.99 in damage to 144 individual shingles, the gutters, and 8 exhaust caps.  Plaintiff estimates the replacement cost to repair damage to this Property is currently $47,091.85.  This damage includes, but is not limited to, the roof, sheathing, and elevations.

x.  The Property denoted as **Building 24** sustained $2,965.18 in damage to 85 individual shingles, the gutters, and 14 exhaust caps.  Plaintiff estimates the replacement cost to repair damage to this Property is currently $66,855.01.  This damage includes, but is not limited to, the roof, sheathing, and elevations.

y.  The Property denoted as **Building 25** sustained $1,750.78 in damage to 60 individual shingles, the gutters, and 8 exhaust caps.  Allegedly, however, there was no damage to the shingles on the front or back slopes.  Plaintiff estimates the replacement cost to repair damage to this Property is currently $82,031.76.  This damage includes, but is not limited to, the roof, sheathing, and elevations.

z.  The Property denoted as **Building 26** sustained $41,281.90 in damage.  Plaintiff

estimates the replacement cost to repair damage to this Property is currently $67,920.69. This damage includes, but is not limited to, the roof, sheathing, and elevations.

aa. The Property denoted as **Building 27** sustained $30,794.84 in damage. Plaintiff estimates the replacement cost to repair damage to this Property is currently $48,339.97. This damage includes, but is not limited to, the roof, sheathing, and elevations.

bb. The Property denoted as **Building 28** sustained $3,276.30 in damage to 112 individual shingles, the gutters, and 14 exhaust caps. Allegedly, however, there was no damage to the shingles on the front slope. Plaintiff estimates the replacement cost to repair damage to this Property is currently $46,744.07. This damage includes, but is not limited to, the roof, sheathing, and elevations.

cc. The Property denoted as **Building 29** sustained $4,350.61 in damage to 91 individual shingles, the gutters, and 8 exhaust caps. Allegedly, however, there was no damage to the shingles on the front, back, and left slopes. Plaintiff estimates the replacement cost to repair damage to this Property is currently $61,336.17. This damage includes, but is not limited to, the roof, sheathing, and elevations.

dd. The Property denoted as **Building 30** sustained $1,435.81 in damage to 38 individual shingles, the gutters, and 8 exhaust caps. Allegedly, however, there was no damage to the shingles on the right and left slopes. Plaintiff estimates the replacement cost to repair damage to this Property is currently $66,311.15. This damage includes, but is not limited to, the roof, sheathing, and elevations.

13

ee. The Property denoted as **Building 31** sustained $2,674.68 in damage to 103 individual shingles, the gutters, and 8 exhaust caps. Allegedly, this represented the damage to all roof slopes. Plaintiff estimates the replacement cost to repair damage to this Property is currently $103,646.85. This damage includes, but is not limited to, the roof, sheathing, and elevations.

ff. The Property denoted as **Building 32** sustained $2,730.14 in damage to 72 individual shingles, the gutters, and 14 exhaust caps. Allegedly, however, there was no damage to the shingles on the right and left slopes. Plaintiff estimates the replacement cost to repair damage to this Property is currently $80,634.98. This damage includes, but is not limited to, the roof, sheathing, and elevations.

gg. The Property denoted as **Building 33** sustained $2,190.51 in damage to 87 individual shingles, the gutters, and 8 exhaust caps. Allegedly, however, there was no damage to the shingles on the front facing slopes. Plaintiff estimates the replacement cost to repair damage to this Property is currently $88,654.51. This damage includes, but is not limited to, the roof, sheathing, and elevations.

hh. The Property denoted as **Building 34** sustained $3,228.41 in damage to 73 individual shingles, the gutters, and 14 exhaust caps. Allegedly, however, there was no damage to the shingles on the left and back facing slopes. Plaintiff estimates the replacement cost to repair damage to this Property is currently $88,383.44. This damage includes, but is not limited to, the roof, sheathing, and elevations.

ii. The Property denoted as **Building 35** sustained $30,796.31 in damage. Plaintiff estimates the replacement cost to repair damage to this Property is currently

$81,056.96. This damage includes, but is not limited to, the roof, sheathing, and elevations.

jj. The Property denoted as **Building 36** sustained $2,093.26 in damage to 58 individual shingles, the gutters, and 8 exhaust caps. Allegedly, however, there was no damage to the shingles on the left and right facing slopes. Plaintiff estimates the replacement cost to repair damage to this Property is currently $55,484.80. This damage includes, but is not limited to, the roof, sheathing, and elevations.

kk. The Property denoted as **Building 37** sustained $2,570.41 in damage to 41 individual shingles, the gutters, and 12 exhaust caps. Allegedly, however, there was no damage to the shingles on the back and right facing slopes. Plaintiff estimates the replacement cost to repair damage to this Property is currently $48,965.00. This damage includes, but is not limited to, the roof, sheathing, and elevations.

ll. The Property denoted as **Building 38** sustained $1,404.77 in damage to the gutters and 12 exhaust caps. Allegedly, however, there was no damage to the shingles on the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $85,196.85. This damage includes, but is not limited to, the roof, sheathing, and elevations.

mm.    The Property denoted as **Building 39** sustained $19,200.81 in damage. Plaintiff estimates the replacement cost to repair damage to this Property is currently $47,413.52. This damage includes, but is not limited to, the roof, sheathing, and elevations.

15

nn. The Property denoted as **Building 40** sustained $41,655.61 in damage. Plaintiff estimates the replacement cost to repair damage to this Property is currently $92,395.62. This damage includes, but is not limited to, the roof, sheathing, and elevations.

oo. The Property denoted as **Building 41** sustained $38,979.69 in damage. Plaintiff estimates the replacement cost to repair damage to this Property is currently $77,176.65. This damage includes, but is not limited to, the roof, sheathing, and elevations.

pp. The Property denoted as **Building 42** sustained $18,099.84 in damage to only half of the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $87,548.07. This damage includes, but is not limited to, the roof, sheathing, and elevations.

qq. The Property denoted as **Building 43** sustained $2,750.57 in damage to 41 individual shingles, the gutters, a window screen, and 14 exhaust caps. Allegedly, however, there was no damage to the shingles on the front, right, and back slopes of the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $77,744.20. This damage includes, but is not limited to, the roof, sheathing, and elevations.

rr. The Property denoted as **Building 44** sustained $1,697.27 in damage to 14 exhaust caps. Allegedly, however, there was no storm damage to the shingles on the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $107,739.17. This damage includes, but is not limited to, the roof,

sheathing, and elevations.

ss. The Property denoted as **Building 45** sustained $38,979.69 in damage. Plaintiff estimates the replacement cost to repair damage to this Property is currently $45,183.78. This damage includes, but is not limited to, the roof, sheathing, and elevations.

tt. The Property denoted as **Building 46** sustained $1,980.07 in damage to 14 exhaust caps, the gutters, and downspouts. Allegedly, however, there was no storm damage to the shingles on the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $89,423.44. This damage includes, but is not limited to, the roof, sheathing, and elevations.

uu. The Property denoted as **Building 47** sustained $2,905.78 in damage to 58 individual shingles, 14 exhaust caps, the gutters, and downspouts. Allegedly, however, there was no storm damage to the left, right, and back slopes of the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $95,688.45. This damage includes, but is not limited to, the roof, sheathing, and elevations.

vv. The Property denoted as **Building 48** sustained $2,108.74 in damage to 14 exhaust caps, the gutters, and downspouts. Allegedly, however, there was no storm damage to the shingles on the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $81,300.75. This damage includes, but is not limited to, the roof, sheathing, and elevations.

ww. The Property denoted as **Building 49** sustained $2,458.63 in damage to 21

individual shingles, 14 exhaust caps, the gutters, and downspouts.   Allegedly, however, there was no storm damage to the front, right, and back slopes of the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $46,442.55.   This damage includes, but is not limited to, the roof, sheathing, and elevations.

xx. The Property denoted as **Building 50** sustained $2,701.04 in damage to 53 individual shingles, 14 exhaust caps, the gutters, and downspouts.   Allegedly, however, there was no storm damage to the left, right, and back slopes of the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $87,617.39.   This damage includes, but is not limited to, the roof, sheathing, and elevations.

yy. The Property denoted as **Building 51** sustained $5,887.03 in damage to 206 individual shingles, 14 exhaust caps, the gutters, and downspouts.   Allegedly, however, there was no storm damage to the right and back slopes of the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $100,122.30.   This damage includes, but is not limited to, the roof, sheathing, and elevations.

zz. The Property denoted as **Building 52** sustained $17,954.80 in damage to 199 individual shingles, 14 exhaust caps, the gutters, and downspouts.   Allegedly, however, there was no storm damage to the right slopes of the roof.   Plaintiff estimates the replacement cost to repair damage to this Property is currently $85,539.70.   This damage includes, but is not limited to, the roof, sheathing, and

18

elevations.

aaa.        The Property denoted as **Building 53** sustained $2,869.83 in damage to 37
individual shingles, 14 exhaust caps, the gutters, and downspouts.   Allegedly,
however, there was no storm damage to the front, back, and left slopes of the roof.
Plaintiff estimates the replacement cost to repair damage to this Property is
currently $52,175.02.   This damage includes, but is not limited to, the roof,
sheathing, and elevations.

bbb.        The Property denoted as **Building 54** sustained $4,512.19 in damage to 145
individual shingles, 14 exhaust caps, the gutters, and downspouts.   Allegedly,
however, there was no storm damage to the front slopes of the roof.   Plaintiff
estimates the replacement cost to repair damage to this Property is currently
$80,995.41.  This damage includes, but is not limited to, the roof, sheathing, and
elevations.

ccc.        The Property denoted as **Building 55** sustained $2,088.05 in damage to 14
exhaust caps, the gutters, and downspouts.   Allegedly, however, there was no storm
damage to shingles on the roof.   Plaintiff estimates the replacement cost to repair
damage to this Property is currently $46,193.98.   This damage includes, but is not
limited to, the roof, sheathing, and elevations.

ddd.        The Property denoted as **Building 56** sustained $2,620.99 in damage to 32
individual shingles, 14 exhaust caps, the gutters, and downspouts.   Allegedly,
however, there was no storm damage to front, left, and back slopes of the roof.
Plaintiff estimates the replacement cost to repair damage to this Property is

currently $80,481.32. This damage includes, but is not limited to, the roof, sheathing, and elevations.

eee.      The Property denoted as **Building 57** sustained $2,516.71 in damage to 106 individual shingles, 8 exhaust caps, the gutters, and downspouts. Allegedly, however, there was no storm damage to the left slopes of the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $57,570.80. This damage includes, but is not limited to, the roof, sheathing, and elevations.

fff. The Property denoted as **Building 58** sustained $4,241.20 in damage to 134 individual shingles, 12 exhaust caps, the gutters, and downspouts. Allegedly, however, there was no storm damage to the right, left, and back slopes of the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $57,373.99. This damage includes, but is not limited to, the roof, sheathing, and elevations.

ggg.      The Property denoted as **Building 59** sustained $2,218.57 in damage to 22 individual shingles, 12 exhaust caps, the gutters, and downspouts. Allegedly, however, there was no storm damage to the right, left, and front slopes of the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $48,939.27. This damage includes, but is not limited to, the roof, sheathing, and elevations.

hhh.      The Property denoted as **Building 60** sustained $3,220.36 in damage to 72 individual shingles, 12 exhaust caps, the gutters, and downspouts. Allegedly,

however, there was no storm damage to the front slopes of the roof. Plaintiff estimates the replacement cost to repair damage to this Property is currently $50,570.49. This damage includes, but is not limited to, the roof, sheathing, and elevations.

    iii. Plaintiff also found $18,439.22 in damage to the pool house, which ASI did not scope.

36.    To date, Plaintiff has received $419,645.78 for damage to Plaintiff's Property. The collective damage to Plaintiff's Properties is currently estimated at $4,386,799.55.

37.    Since due demand was made on October 18, 2016, Defendants have not communicated that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did it provide any explanation for failing to settle Plaintiff's claim properly.

38.    As stated above, Defendants failed to assess the claim thoroughly. Based upon Defendants' grossly unreasonable, intentional, and reckless failure to investigate and adjust the claim properly, Defendant ASI failed to provide full coverage due under the Policy.

39.    As a result of ASI failure to provide full coverage, along its agent's delay tactics to avoid reasonable payment to Plaintiff, Plaintiff has suffered damages.

40.    ASI failed to perform its contractual duties to Plaintiff under the terms of the Policy. Specifically, ASI refused to pay the full proceeds of the Policy, although due demand was made for an amount sufficient to cover repairs to the damaged Property, and all conditions precedent to recover upon the Policy were accomplished by Plaintiff.

41.    Defendants' misrepresentations, unreasonable delays, and continued denials constitute a

breach of the statutory obligations under Chapters 541 and 542 of the Texas Insurance Code. Thus, the breach of the statutory duties constitutes the foundation of a breach of the insurance contract between ASI and Plaintiff.

42.    Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(1). Defendants have not attempted to settle Plaintiff's claim in a fair manner, even though Defendants were aware of their liability to Plaintiff under the Policy. Specifically, Defendants have failed to timely pay Plaintiff's coverage due under the Policy.

43.    Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(2)(A). Defendants failed to provide Plaintiff a reasonable explanation for not making the full payment under the terms of the Policy.

44.    Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(4). Defendants refused to provide full coverage due to Plaintiff under the terms of the Policy. Specifically, ASI, through its agents, servants, and representatives, performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's losses on the Property.

45.    Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055. Defendants failed to reasonably accept or deny Plaintiff's full claim within the statutorily mandated time after receiving all necessary information.

46.    Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment

22

of Claims. TEX. INS. CODE §542.056. Defendants failed to meet their obligations under the Texas Insurance Code regarding timely payment of the claim. Specifically, Defendants have delayed payment of Plaintiff's claim longer than allowed, and Plaintiff has not received full payment for the claim.

47.   Defendants' wrongful acts and omissions forced Plaintiff to retain the professional services of the attorneys and law firm representing it with respect to these causes of action.

**CAUSES OF ACTION AGAINST DEFENDANT
ASI LLOYDS**

**BREACH OF CONTRACT**

48.   All allegations above are incorporated herein.

49.   ASI is liable to Plaintiff for intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing. It follows, then, that the breach of the statutory duties constitutes the foundation of an intentional breach of the insurance contract between ASI and Plaintiff.

50.   ASI's failure and/or refusal to pay adequate coverage as obligated under the terms of the Policy, and under the laws of the State of Texas, constitutes a breach of the insurance contract with Plaintiff.

**NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE:
UNFAIR SETTLEMENT PRACTICES**

51.   All allegations above are incorporated herein.

52.   ASI's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a). All violations under this article are actionable by TEX. INS. CODE §541.151.

23

53. ASI's unfair settlement practice of misrepresenting to Plaintiff material facts relating to coverage constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(1).

54. ASI's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(2)(A).

55. ASI's unfair settlement practice of failing to provide Plaintiff a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for underpayment of the claim, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(3).

56. ASI's unfair settlement practice of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(4).

57. ASI's unfair settlement practice of refusing to pay Plaintiff's claim without conducting a reasonable investigation constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(7).

## NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS

58. All allegations above are incorporated herein.

59. ASI's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims.  All violations made under this article are actionable by TEX. INS. CODE §542.060.

24

60.     ASI's failure to notify Plaintiff in writing of its acceptance or rejection of the full claim within the applicable time constraints constitutes a non-prompt payment in violation of TEX. INS. CODE §542.056.

61.     ASI's delay in paying Plaintiff's claim following receipt of all items, statements, and forms reasonably requested and required, for longer than the amount of time provided, constitutes a non-prompt payment of the claim.  TEX. INS. CODE §542.058.

## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

62.     All allegations above are incorporated herein.

63.     ASI's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to an insured in insurance contracts.

64.     ASI failure to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, ASI knew or should have known by the exercise of reasonable diligence that liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## DTPA VIOLATIONS

65.     All allegations above are incorporated herein.

66.     ASI's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63.  Plaintiff is a consumer of goods and services provided by Defendant pursuant to the DTPA.  Plaintiff has met all conditions precedent to bringing this cause of action against ASI.  Specifically, Defendant's violations of the DTPA include, without limitation, the following matters:

25

A.  By its acts, omissions, failures, and conduct, ASI has violated sections 17.46(b)(2), (5), (7), (9), (12), (20) and (24) of the DTPA.  Defendant's violations include without limitation, (1) unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim, (2) failure to give Plaintiff the benefit of the doubt, and (3) failure to pay for the proper repair of Plaintiff's property when liability has become reasonably clear, which gives Plaintiff the right to recover under section 17.46(b)(2).

B.  ASI represented to Plaintiff that the Policy and its adjusting and investigative services had characteristics or benefits that they did not possess, which gives Plaintiff the right to recover under section 17.46(b)(5) of the DTPA.

C.  ASI also represented to Plaintiff that the Policy and its adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

D.  Furthermore, Defendant advertised the Policy and adjusting services with the intent not to sell them as advertised, in violation of section 17.46(b)(9) of the DTPA.

E.  Defendant breached an express warranty that the damages caused by wind and hail would be covered under the Policy.  This breach entitles Plaintiff to recover under sections 17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA.

F.  Defendant's actions are unconscionable in that Defendant took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unconscionable conduct gives Plaintiff a right to relief under section 17.50(a)(3) of the DTPA; and

26

G.      Defendant's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

67.      Each of the above-described acts, omissions, and failures of ASI is a producing cause of Plaintiff's damages. All of the above-described acts, omissions, and failures were committed "knowingly" and "intentionally," as defined by the Texas Deceptive Trade Practices Act.

## NEGLIGENT HIRING

68.      ASI has a basic duty as an employer who retains services of another to use reasonable care in investigating the background of that individual or third party adjusting company for fitness for the position, to remain knowledgeable of that fitness, and is liable if another person suffers damages because of a lack of fitness. Defendant ASI owed a duty to Plaintiff and that duty was breached.

69.      ASI was negligent in that it knew or should have known that its agents were unfit to handle claims on behalf of ASI. Specifically, ASI should have known its agents were incapable of performing the tasks necessary to reasonably inspect property damage.

70.      ASI failed to investigate, screen or supervise the agents listed above, who constitute the proximate cause of the damages suffered by Plaintiff in this action.

## FRAUD

71.      All allegations above are incorporated herein.

72.      Defendant is liable to Plaintiff for common law fraud.

73.    Each and every misrepresentation described above concerned material facts that absent
       such representations, Plaintiff would not have acted as Plaintiff did, and Defendant knew
       its representations were false or made recklessly without any knowledge of their truth as a
       positive assertion.

74.    Defendant made the statements intending that Plaintiff act upon them.  Plaintiff then acted
       in reliance upon the statements, thereby causing Plaintiff to suffer injury constituting
       common law fraud.

## CAUSES OF ACTION AGAINST DEFENDANTS
## AMILEX CONSULTANTS, LLC AND CROSSPOINTE CONSTRUCTION, INC.

### NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE:
### UNFAIR SETTLEMENT PRACTICES

75.    All allegations above are incorporated herein.

76.    Amilex and Crosspointe's conduct constitutes multiple violations of the Texas Insurance
       Code, Unfair Claim Settlement Practices Act.  TEX. INS. CODE §541.060(a).

77.    Defendants Amilex and Crosspointe are liable for their unfair and deceptive acts,
       irrespective of the fact that they were acting on behalf of Defendant ASI.

78.    Defendants Amilex and Crosspointe knowingly underestimated the amount of damage to
       the Properties.  As such, Defendants Amilex and Crosspointe failed to adopt and implement
       reasonable standards for the investigation of the claim arising under the Policy.  TEX. INS.
       CODE §542.003(3).

79.    Furthermore, Defendants Amilex and Crosspointe did not attempt in good faith to affect a
       fair, prompt, and equitable settlement of the claim.  TEX. INS. CODE §542.003(4).

80.     Amilex and Crosspointe's unfair settlement practice of failing to provide Plaintiff a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for underpayment of the claim, also constitutes an unfair method of competition and an unfair and deceptive act or practice. TEX. INS. CODE §541.060(a)(3).

81.     Amilex and Crosspointe's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

## NONCOMPLAINCE WITH THE TEXAS INSURANCE CODE: REGULATION OF PROFESSIONALS

82.     All allegations above are incorporated herein.

83.     ASI initially assigned adjustment of the claim to Amilex and Crosspointe.

84.     At the time Amilex and Crosspointe adjusted Plaintiff's claim, it does not appear that either entity was a duly licensed adjusting company in the State of Texas. This constitutes a violation of the Texas Insurance Code, Regulation of Professionals. TEX. INS. CODE §4101.051.

85.     The adjustment of Plaintiff's claim was highly problematic because ASI used these estimates/assessment to determine the value of Plaintiff's claim.

86.     Ultimately, ASI adopted and agreed with Amilex and Crosspointe's assessment/adjustment of damages, despite the fact that neither entity was a licensed adjusting company in the State of Texas.

## DTPA VIOLATIONS

87.     All allegations above are incorporated herein.

88.    Amilex and Crosspointe's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63.  Plaintiff is a consumer of goods and services provided by Amilex and Crosspointe pursuant to the DTPA.  Plaintiff has met all conditions precedent to bringing this cause of action against Defendants Amilex and Crosspointe.  Specifically, Amilex and Crosspointe's violations of the DTPA include the following matters:

A.    By Amilex and Crosspointe's acts, omissions, failures, and conduct, Amilex and Crosspointe have violated sections 17.46(b)(2), (5), and (7) of the DTPA.  Amilex and Crosspointe's violations include, (1) failure to give Plaintiff the benefit of the doubt, and (2) failure to write up an estimate reflecting the proper repair of Plaintiff's Property when liability has become reasonably clear, which gives Plaintiff the right to recover under section 17.46(b)(2).

B.    Defendants Amilex and Crosspointe represented to Plaintiff that the Policy and their adjusting and investigative services had characteristics or benefits they did not possess, which gives Plaintiff the right to recover under section 17.46(b)(5) of the DTPA.

C.    Defendants Amilex and Crosspointe represented to Plaintiff that the Policy and their adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

D.    Amilex and Crosspointe's actions are unconscionable in that they took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree.

            Amilex and Crosspointe's unconscionable conduct gives Plaintiff a right to relief under section 17.50(a)(3) of the DTPA; and

E.      Amilex and Crosspointe's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

89.     Amilex and Crosspointe's above-described acts, omissions, and failures are a producing cause of Plaintiff's damages.   All acts, omissions, and failures were committed "knowingly" and "intentionally" by Amilex and Crosspointe, as defined by the Texas Deceptive Trade Practices Act.  TEX. BUS. & COM. CODE 17.45.

## NEGLIGENCE

90.     All allegations above are incorporated herein.

91.     Defendant Amilex and Crosspointe were negligent in their actions with regard to their adjusting and investigation of Plaintiff's claim, and violated the standard of care in the State of Texas. Those failures include one or more of the following acts or omissions:

     a.  Failure to conduct  reasonable inspection;

     b.  Failure to include covered damage that would be discovered as a result of a reasonable inspection;

     c.  Failure to identify the proper cause and scope of the damage to Plaintiff's Property;

     d.  Failure to identify the cost of proper repairs to Plaintiff's Property; and

     e.  Failure to communicate to Plaintiff the reasons for specific determinations made regarding the inclusion or exclusion of damage to Plaintiff's Property.

92.     Amilex and Crosspointe's acts and/or omissions constitute negligence. Their conduct, individually and together, was therefore a proximate cause of the damages sustained by Plaintiff.

93.     At all relevant times, Amilex and Crosspointe were agents or employees of Defendant ASI.

94.     Amilex and Crosspointe's unreasonable inspections were performed within the course and scope of their duties with Defendant ASI. Therefore, Defendant ASI is also liable for the negligence of Amilex and Crosspointe through the doctrine of respondeat superior.

**GROSS NEGLIGENCE**

95.     All allegations above are incorporated herein.

96.     Amilex and Crosspointe's actions or omissions constitute gross negligence as defined in TEX. CIV. P. & REM. CODE § 41.001 (11)(A) and (B):

     a.  Amilex and Crosspointe's actions, when viewed objectively from the standpoint of the actor at the time of their occurrence involves an extreme degree of risk, considering the probability and magnitude of potential harm to Plaintiff; and

     b.  Amilex and Crosspointe had actual, subjective awareness of the risk involved, but nevertheless proceeded with a conscious indifference to the rights, safety, and/or welfare of Plaintiff.

97.     Amilex and Crosspointe intentionally misrepresented the scope and amount of damages. Their estimates/assessments were to such an extreme degree below what a licensed adjuster would have done in this situation; it was also in complete disregard for the risk and harm Plaintiff would suffer if the actual damages to the Property were allowed to persist unrepaired.

## CAUSES OF ACTION AGAINST DEFENDANTS MICHAEL FOWLER AND ALAN BERRYHILL

### NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: REGULATION OF PROFESSIONALS

98.     All allegations above are incorporated herein.

99.     ASI initially assigned adjustment/consultation/inspection of the claim to Fowler and Berryhill.

100.    Ultimately, ASI adopted and agreed with Berryhill and Fowler's assessment/adjustment of damages, despite the fact that neither one is seemingly a licensed adjuster or a qualified adjuster in the State of Texas.

### NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

101.    All allegations above are incorporated herein.

102.    Fowler and Berryhill's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Claim Settlement Practices Act. TEX. INS. CODE §541.060(a).

103.    Fowler and Berryhill are individually liable for their unfair and deceptive acts, irrespective of the fact that they acting on behalf of ASI, because Fowler and Berryhill are identified as "persons," as defined by TEX. INS. CODE §541.002(2).

104.    Fowler and Berryhill knowingly underestimated the amount of damage to the Property. As such, Fowler and Berryhill failed to adopt and implement reasonable standards for the investigation of the claim arising under the Policy. TEX. INS. CODE §542.003(3).

105.    Furthermore, Fowler and Berryhill did not attempt in good faith to effect a fair, prompt, and equitable settlement of the claim. TEX. INS. CODE §542.003(4).

33

106. Fowler and Berryhill's unfair settlement practice of failing to provide Plaintiff a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for underpayment of the claim, also constitutes an unfair method of competition and an unfair and deceptive act or practice.  TEX. INS. CODE §541.060(a)(3).

107. Fowler and Berryhill's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(2)(A).

## DTPA VIOLATIONS

108. All allegations above are incorporated herein.

109. Fowler and Berryhill's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63.  Plaintiff is a consumer of goods and services provided by Fowler and Berryhill pursuant to the DTPA. Plaintiff has met all conditions precedent to bringing this cause of action against Fowler and Berryhill. Specifically, Fowler and Berryhill's violations of the DTPA include the following matters:

F.   By these Defendants' acts, omissions, failures, and conduct, Fowler and Berryhill have violated sections 17.46(b)(2), (5), and (7) of the DTPA.  Fowler and Berryhill's violations include, (1) failure to give Plaintiff the benefit of the doubt, and (2) failure to write up an estimate reflecting the proper repair of Plaintiff's Property when liability has become reasonably clear, which gives Plaintiff the right to recover under section 17.46(b)(2).

34

G.   Fowler and Berryhill represented to Plaintiff that the Policy and their adjusting and investigative services had characteristics or benefits they did not possess, which gives Plaintiff the right to recover under section 17.46(b)(5) of the DTPA.

H.   Fowler and Berryhill represented to Plaintiff that the Policy and their adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

I.   Fowler and Berryhill's actions are unconscionable in that Fowler and Berryhill took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree.  Fowler's and Berryhill's unconscionable conduct gives Plaintiff a right to relief under section 17.50(a)(3) of the DTPA; and

J.   Fowler and Berryhill's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

110.   Each of Fowler's and Berryhill's above-described acts, omissions, and failures is a producing cause of Plaintiff's damages.  All acts, omissions, and failures were committed "knowingly" and "intentionally" by Fowler and Berryhill, as defined by the Texas Deceptive Trade Practices Act.  TEX. BUS. & COM. CODE 17.45.

### FRAUD

111.   All allegations above are incorporated herein.

112.   ASI assigned or hired Fowler and Berryhill to adjust the claim.

a.   Fowler and Berryhill had a vested interest in undervaluing the claims assigned to them by ASI in order to maintain their employment. The disparity in the number of

damaged items in their assessment/report compared to that of Plaintiff's is evidence of fraud on the part of Fowler and Berryhill. The valuation of damages that were included in Fowler's and Berryhill's reports compared to Plaintiff's is also evidence of fraud on the part of Fowler and Berryhill.

b. Fowler and Berryhill made misrepresentations as to the amount of damage Plaintiff's Property sustained as well as misrepresentations regarding how much it would cost to repair the damage to Plaintiff's Property.

c. Fowler and Berryhill made further misrepresentations to Plaintiff during their inspections. Fowler and Berryhill used their expertise to fabricate plausible explanations for why visible damage to Plaintiff's Property would not be covered under the policy.

## NEGLIGENCE

113. All allegations above are incorporated herein.

114. Fowler and Berryhill were negligent in their actions with regard to their adjusting of Plaintiff's claim, and violated the standard of care for an insurance adjuster licensed (if they are in fact licensed) in the state of Texas. Those failures include one or more of the following acts or omissions:

a. Failure to conduct a reasonable inspection;

b. Failure to include covered damage that would be discovered as a result of reasonable inspection;

c. Failure to identify the proper cause and scope of the damage to Plaintiff's Property;

d. Failure to identify the cost of proper repairs to Plaintiff's Property; and

     e.  Failure to communicate to Plaintiff the reasons for specific determinations made regarding the inclusion or exclusion of damage to Plaintiff's Property.

115.  Fowler and Berryhill's acts and/or omissions constitute negligence. Their conduct was therefore a proximate cause of the damages sustained by Plaintiff.

116.  At all relevant times, Fowler and Berryhill were agents or employees of Defendant ASI.

117.  Fowler's and Berryhill's unreasonable inspections were performed within the course and scope of their duties with Defendant ASI. Therefore, ASI is also liable for the negligence of Fowler and Berryhill through the doctrine of respondeat superior.

## GROSS NEGLIGENCE

118.  All allegations above are incorporated herein.

119.  Fowler and Berryhill's actions or omissions constitute gross negligence as defined in TEX. CIV. P. & REM. CODE § 41.001 (11)(A) and (B):

     a.  Fowler and Berryhill's actions, when viewed objectively from the standpoint of the actor at the time of their occurrence involve an extreme degree of risk, considering the probability and magnitude of potential harm to Plaintiff; and

     b.  Fowler and Berryhill had actual, subjective awareness of the risk involved but nevertheless proceeded with a conscious indifference to the rights, safety, and/or welfare of Plaintiff.

120.  Fowler and Berryhill intentionally misrepresented the scope and amount of damages on the estimate prepared for Plaintiff's Property on behalf of ASI. Their estimates/assessments were such an extreme degree below what a licensed adjuster would have done in this

situation; it was also in complete disregard for the risk and harm Plaintiff would suffer if the actual damages to the Property were allowed to persist unrepaired.

## CAUSES OF ACTION AGAINST DEFENDANT ALLEN LAYNE

### NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

121. All allegations above are incorporated herein.

122. Layne's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Claim Settlement Practices Act. TEX. INS. CODE §541.060(a).

123. Layne is individually liable for his unfair and deceptive acts, irrespective of the fact that he was acting on behalf of ASI, because Layne is a "person," as defined by TEX. INS. CODE §541.002(2).

124. Layne knowingly underestimated the amount of damage to the Property. As such, Layne failed to adopt and implement reasonable standards for the investigation of the claim arising under the Policy. TEX. INS. CODE §542.003(3).

125. Furthermore, Layne did not attempt in good faith to effect a fair, prompt, and equitable settlement of the claim. TEX. INS. CODE §542.003(4).

126. Layne's unfair settlement practice of failing to provide Plaintiff a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for underpayment of the claim, also constitutes an unfair method of competition and an unfair and deceptive act or practice. TEX. INS. CODE §541.060(a)(3).

127. Layne's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though liability under the Policy was reasonably

clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

## DTPA VIOLATIONS

128.   All allegations above are incorporated herein.

129.   Layne's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63. Plaintiff is a consumer of goods and services provided by Layne pursuant to the DTPA. Plaintiff has met all conditions precedent to bringing this cause of action against Layne. Specifically, Layne's violations of the DTPA include the following matters:

K.   By this Defendant's acts, omissions, failures, and conduct, Layne has violated sections 17.46(b)(2), (5), and (7) of the DTPA. Layne's violations include, (1) failure to give Plaintiff the benefit of the doubt, and (2) failure to write up an estimate reflecting the proper repair of Plaintiff's Property when liability has become reasonably clear, which gives Plaintiff the right to recover under section 17.46(b)(2).

L.   Layne represented to Plaintiff that the Policy and his adjusting and investigative services had characteristics or benefits they did not possess, which gives Plaintiff the right to recover under section 17.46(b)(5) of the DTPA.

M.   Layne represented to Plaintiff that the Policy and his adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

N.     Layne's actions are unconscionable in that Layne took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Layne's unconscionable conduct gives Plaintiff a right to relief under section 17.50(a)(3) of the DTPA; and

O.     Layne's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

130.   Each of Layne's above-described acts, omissions, and failures is a producing cause of Plaintiff's damages. All acts, omissions, and failures were committed "knowingly" and "intentionally" by Layne, as defined by the Texas Deceptive Trade Practices Act. TEX. BUS. & COM. CODE 17.45.

**FRAUD**

131.   All allegations above are incorporated herein.

132.   ASI assigned or hired Layne to adjust the claim.

a.     Layne had a vested interest in undervaluing the claims assigned to him by ASI in order to maintain his employment. The disparity in the number of damaged items in his report compared to that of Plaintiff's is evidence of fraud on the part of Layne. The valuation of damages that were included in Layne's report compared to Plaintiff's is also evidence of fraud on the part of Layne.

b.     Layne made misrepresentations as to the amount of damage Plaintiff's Property sustained as well as misrepresentations regarding how much it would cost to repair the damage to Plaintiff's Property. Layne used his expertise to fabricate plausible

40

explanations for why visible damage to Plaintiff's Property would not be covered under the policy.

## NEGLIGENCE

133.  All allegations above are incorporated herein.

134.  Layne was negligent in his actions with regard to his adjusting of Plaintiff's claim and violated the standard of care for an insurance adjuster licensed in the state of Texas. Those failures include one or more of the following acts or omissions:

    a.  Failure to conduct a reasonable inspection;

    b.  Failure to include covered damage that would be discovered as a result of reasonable inspection;

    c.  Failure to identify the proper cause and scope of the damage to Plaintiff's Property;

    d.  Failure to identify the cost of proper repairs to Plaintiff's Property; and

    e.  Failure to communicate to Plaintiff the reasons for specific determinations made regarding the inclusion or exclusion of damage to Plaintiff's Property.

135.  Layne's acts and/or omissions constitute negligence. His conduct was therefore a proximate cause of the damages sustained by Plaintiff.

136.  At all relevant times, Layne was an agent or employee of Defendant ASI.

137.  Layne's unreasonable inspection was performed within the course and scope of his duties with Defendant ASI. Therefore, ASI is also liable for the negligence of Layne through the doctrine of respondeat superior.

## GROSS NEGLIGENCE

138.  All allegations above are incorporated herein.

139. Layne's actions or omissions constitute gross negligence as defined in TEX. CIV. P. & REM. CODE § 41.001 (11)(A) and (B):

    a. Layne's actions, when viewed objectively from the standpoint of the actor at the time of their occurrence involves an extreme degree of risk, considering the probability and magnitude of potential harm to Plaintiff; and

    b. Layne had actual, subjective awareness of the risk involved but nevertheless proceeded with a conscious indifference to the rights, safety, and/or welfare of Plaintiff.

140. Layne intentionally misrepresented the scope and amount of damages on the estimate prepared for Plaintiff's Property on behalf of ASI. His estimate was to such an extreme degree below what another licensed adjuster would have done in this situation; it was also in complete disregard for the risk and harm Plaintiff would suffer if the actual damages to the Property were allowed to persist unrepaired.

### CAUSES OF ACTION AGAINST DEFENDANT
### LARRY C. JONES INSURANCE AGENCY

#### DTPA VIOLATIONS

141. All allegations above are incorporated herein.

142. Jones' conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.46. Specifically, its violations of the DTPA include, without limitation, the following matters:

    P. By its acts, omissions, failures, and conduct, Jones violated sections 17.46(b)(2) and 17.46(b)(5) of the DTPA. Jones' violations include causing confusion as to the Policy benefits, and representing that the Policy had benefits or characteristics that

it did not possess. Jones' violations also include the failure to discuss with Plaintiff material exclusions or limitations.

Q.  Jones breached an express warranty during the sale of the Policy that the damages caused by wind and hail would be covered under the Policy subject to correct Policy terms, when they were not. This breach entitles Plaintiff to recover under sections 17.46(b)(12), 17.46(b)(20), and 17.50(a)(2) of the DTPA.

R.  Jones' conduct, acts, omissions, and failures are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

S.  Jones' actions are unconscionable in that Jones took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Jones' unconscionable conduct gives Plaintiff a right to relief under section 17.50(a)(3) of the DTPA; and

143.  Each of Jones' above-described acts, omissions, and failures is a producing cause of Plaintiff's damages. All of the above-described acts, omissions, and failures were committed "knowingly" and "intentionally" by Jones, as defined by the Texas Deceptive Trade Practices Act. TEX. BUS. & COM. CODE 17.45.

### FRAUD

144.  All allegations above are incorporated herein.

145.  Jones is liable to Plaintiff for common law fraud.

146.  Each and every representation described above concerned material facts that absent such representations, Plaintiff would not have acted as Plaintiff did, and Jones knew the

representations were false or made recklessly without any knowledge of their truth as a positive assertion.

147.    Jones made these statements intending that Plaintiff act upon them. Plaintiff then acted in reliance upon the statements, thereby causing Plaintiff to suffer injury constituting common law fraud. Specifically, Jones represented to Plaintiff during the sale of the Policy that the Policy had benefits or characteristics it did not possess. Plaintiff relied on these statements, and as a result, has suffered damages to Plaintiff's Property.

## KNOWLEDGE

148.    Defendants made each of the acts described above, together and singularly, "knowingly," as defined in the Texas Insurance Code, and each was a producing cause of Plaintiff's damages described herein.

## WAIVER AND ESTOPPEL

149.    Defendants have waived and are estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Plaintiff.

## DAMAGES

150.    Since the claim was made, ASI has not properly compensated Plaintiff for all necessary repairs required to be made, which are covered under the Policy. This has caused undue hardship and burden to Plaintiff. These damages are a direct result of Defendants' mishandling of Plaintiff's claim in violation of the laws set forth above.

151.    Defendants made the above and other false representations to Plaintiff, either knowingly or recklessly, as a positive assertion, without knowledge of the truth. Defendants made

44

these false misrepresentations with the intent that Plaintiff act in accordance with the misrepresentations. Plaintiff then relied on these misrepresentations, including but not limited to those regarding coverage and the cause and scope of damage. Plaintiff suffered damages as a result.

152. Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of damages sustained. The acts, omissions, failures, and conduct of Defendants have caused Plaintiff's damages, which include, without limitation, costs for all necessary repairs required to be made to Plaintiff's Property, and any investigative and engineering fees incurred.

153. For breach of contract, Plaintiff is entitled to regain the benefit of Plaintiff's bargain, which is the amount of Plaintiff's claim, consequential damages, together with attorney's fees.

154. The damage to Plaintiff's Property is currently estimated at $4,386,799.55.

155. For noncompliance with the DTPA and Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits owed pursuant to the Policy, court costs, and attorney's fees. For knowing and intentional conduct of the acts described above, Plaintiff asks for three (3) times Plaintiff's actual damages. TEX. INS. CODE §541.152 and TEX. BUS. & COM. CODE 17.50(B)(1).

156. For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of Plaintiff's claim, plus an eighteen percent (18%) per annum penalty on that claim, as damages, as well as pre-judgment interest and reasonable attorney's fees. TEX. INS. CODE §542.060.

157.    For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from Defendants' breach of duty, such as additional costs, economic hardship, losses due to nonpayment of money ASI owed, and exemplary damages.

158.    Defendants' breach of the common law duty of good faith and fair dealing was committed intentionally, with a conscious indifference to Plaintiff's rights and welfare, and with "malice," as that term is defined in Chapter 41 of the Texas Civil Practices and Remedies Code. These violations are the type of conduct which the State of Texas protects its citizens against by the imposition of exemplary damages. Therefore, Plaintiff seeks the recovery of exemplary damages in an amount determined by the finder of fact sufficient to punish Defendants for their wrongful conduct and to set an example to deter Defendants and others from committing similar acts in the future.

159.    For fraud, Plaintiff is entitled to recover actual and exemplary damages for knowingly fraudulent and malicious representations, along with attorney's fees, interest, and court costs.

160.    For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorneys subscribed to this pleading. Therefore, under Chapter 38 of the Texas Civil Practices and Remedies Code, sections 541 and 542 of the Texas Insurance Code, and section 17.50 of the DTPA, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

161.    As required by Rule 47(b) of the Texas Rules of Civil Procedure, Plaintiff's counsel states

that the damages sought are in an amount within the jurisdictional limits of this Court. As

required by Rule 47(c)(5) of the Texas Rules of Civil Procedure, Plaintiff's counsel states that

Plaintiff seeks only monetary relief of no less than $1,000,000.00. A jury will ultimately

determine the monetary relief actually awarded, however. Plaintiff also seeks pre-judgment

and post-judgment interest at the highest legal rate.

## REQUESTS FOR DISCLOSURE

162.    Under Texas Rules of Civil Procedure 190 and 194, Plaintiff requests that Defendants

disclose, within fifty (50) days from the date this request is served, the information or material

described in Rules 190.2(b)(6) and 194.2.

## JURY DEMAND

163.    Plaintiff hereby requests a jury trial for all causes of action alleged herein, tried before a

jury consisting of citizens residing in Harris County, Texas. Plaintiff hereby tenders the

appropriate jury fee.

## PRAYER

Plaintiff prays that Defendants, ASI Lloyds, Larry C. Jones Insurance Agency, Amilex

Consultants, LLC, Michael Fowler, Alan Berryhill, Crosspointe Construction, Inc., and Allen

Layne, be cited and served to appear, and that upon trial hereof, Plaintiff, The Retreat at

Gleannloch Farms HOA, has and recovers from Defendants, such sums as would reasonably and

justly compensate Plaintiff in accordance with the rules of law and procedure, as to actual,

consequential, and treble damages under the Texas Insurance Code and Texas Deceptive Trade

Practices Act, and all punitive, additional, and exemplary damages, as may be found. In addition,

47

Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court expended on Plaintiff's behalf, for pre-judgment and post-judgment interest as allowed by law; and for any other and further relief, at law or in equity, to which Plaintiff, The Retreat at Gleannloch Farms HOA, may show Plaintiff is justly entitled.

Respectfully submitted,

CHAD T WILSON LAW FIRM PLLC

By: /s/ *Chad T. Wilson*

Chad T. Wilson
Bar No. 24079587
Kimberly N. Blum
Bar No. 24092148
1322 Space Park Drive, Suite A155
Houston, Texas 77058
Telephone: (832) 415-1432
Facsimile: (281) 940-2137
eservice@cwilsonlaw.com
cwilson@cwilsonlaw.com
kblum@cwilsonlaw.com

ATTORNEYS FOR PLAINTIFF

48